1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   FRANCISCO LOPEZ,

11          Petitioner,                    No. CIV S-02-2148 GEB DAD P

12        vs.

13   BOARD OF PRISON TERMS, et. al.,

14          Respondents.            FINDINGS AND RECOMMENDATIONS

15   _____/

16          Petitioner is a state prisoner proceeding pro se with this habeas corpus action.

17   Petitioner is in state custody pursuant to his 1988 Fresno County Superior Court conviction for

18   second degree murder.  He challenges a decision made by the California Board of Prison Terms

19   on November 28, 2000, finding him not suitable for parole.  Respondents filed an answer to the

20   habeas petition on November 8, 2002, and petitioner filed a traverse on December 12, 2002.  For

21   the reasons set forth below, the undersigned will recommend that petitioner's application for a

22   writ of habeas corpus be denied.

23                          PETITIONER'S CLAIMS

24          Petitioner's initial parole consideration hearing was held on May 13, 1997.  The

25   Board of Prison Terms found petitioner unsuitable for parole at that time and deferred further

26   parole consideration for three years.  (Answer, Ex. C at 13; Traverse at 9.)  Petitioner's first

1

1  subsequent parole consideration hearing was held on November 28, 2000, and resulted in the

2  two-year denial at issue in this case.  (Pet. at 5(a).)  The Board's Office of Policy and Appeals

3  denied petitioner's appeal from the November 28, 2000 decision on the merits in a written

4  decision dated June 12, 2001.  (Pet. at 5, Exs. A & B; Answer, Ex. D.)  Petitioner attacked the

5  decision in a habeas petition filed in the San Joaquin County Superior Court on August 27, 2001.

6  (Pet., Ex. C.)  That court denied the petition on its merits in a written decision filed October 1,

7  2001.  (Pet., Ex. C; Answer, Ex. E.)  A habeas petition filed in the California Court of Appeal for

8  the Third Appellate District was summarily denied on November 29, 2001.  (Pet., Ex. D;

9  Answer, Ex. F.)  A habeas petition filed in the California Supreme Court was summarily denied

10  on July 31, 2002.  (Pet., Ex. E; Answer, Ex. G.)

11        In his federal habeas petition, petitioner alleges five grounds for relief, which the

12  court summarizes as follows:

13        (1) the Board applied an invalid presumption of unsuitability for
parole when it failed to set petitioner's release date and thereby
14  extended the punishment for petitioner's crime in violation of his
Fourteenth Amendment rights and the Ex Post Facto Clause;

15

16        (2) the Board's use of "unreasonable risk of danger to others" as a
presumption of unsuitability is a misapplication of statutory
authority and has been used since 1994 not to allow the release of
17  any prisoner convicted of murder;

18        (3) the Board's relitigation of the unchangeable circumstances of
the commitment offense to find petitioner unsuitable for parole
19  violates the prohibition against double jeopardy;

20        (4) the Board's separate decision to defer further parole
consideration for two years was based on the same facts used to
21  find petitioner unsuitable for parole and therefore violated state law
and the prohibition against double jeopardy; and

22

23        (5) the Board's policy of denying parole dates to all murderers
violates the intent of state law and is void under the Fourteenth
Amendment.

24

25  (Pet. at 5, 5a-5o, & 6.)

26  /////

2

RESPONDENTS' ANSWER

Respondents state that petitioner was sentenced to an indeterminate state prison term of 22 years to life in prison for his conviction of second degree murder.  Respondents assert that the Board informed petitioner at his November 28, 2000 subsequent parole consideration hearing that he had certain rights in connection with the hearing, and neither petitioner nor his counsel raised any objection pursuant to those rights.  Petitioner testified in support of his parole suitability, and counsel argued on his behalf.  The Board commended petitioner for obtaining his GED, completing vocational drafting, participating in AA/NA, and being disciplinary-free since 1995.  At the conclusion of the hearing, the Board decided that petitioner was unsuitable for parole and deferred a further hearing for two years.  The Board concluded that petitioner would pose an unreasonable risk of danger to society or a threat to public safety if released.  The Board noted that petitioner's offense was carried out in an exceptionally cruel and dispassionate manner that demonstrated disregard for human life.  The Board based its conclusions on the following findings: petitioner shot and killed the victim as he stood in the street but did not remember the murder; petitioner was convicted in 1978 of assault with intent to commit murder, was sent to state prison, and after his release was convicted of assault with a deadly weapon; a doctor noted that petitioner's behavior at the time of his offense of conviction was antisocial and impacted by the influence of alcohol and drugs and a return to such substances would be a great risk factor; petitioner had not sufficiently participated in beneficial self-help and therapy programming; he had received nine CDC 128's and one CDC 115 during his current term of incarceration; he did not have realistic or viable residential or employment plans for parole; and the Fresno County District Attorney opposed petitioner's release from prison.  (Answer at 1-3.)  Respondents do not dispute that petitioner appealed the Board's decision and filed state habeas petitions in the San Joaquin County Superior Court, the California Court of Appeal for the Third Appellate District, and the California Supreme Court.  (Id. at 3.)

/////

1    In response to petitioner's five grounds for relief, respondents specifically deny

2  that the Board's failure to set a parole release date at petitioner's initial parole suitability hearing

3  was a violation of the law, deny that the Board relitigated the circumstances of petitioner's

4  commitment offense during the subsequent parole consideration hearing, deny that the Board's

5  finding of unsuitability for parole violated state law and subjected petitioner to double jeopardy,

6  and deny that the Governor and the Board have a policy of denying parole to all prisoners serving

7  life terms for murder. (Id. at 3-4.)  Respondents assert that petitioner has failed to raise a

8  cognizable federal question and that the petition is without merit. (Id. at 4.)

9    Respondents argue first that the petition should be dismissed for lack of subject

10  matter jurisdiction.  Respondents contend that California law creates nothing more than a mere

11  hope of release on parole and gives the Board of Prison Terms plenary authority to make parole

12  determinations, with virtually unfettered discretion to base a parole suitability decision on a wide

13  and generalized consideration of society's interest in the parole release decision.  Respondents

14  contend that the applicable statutes and regulations do not guarantee parole release to prisoners

15  merely for successfully jumping through certain hoops.  Respondents ask the court to deny the

16  petition on the ground that petitioner has no liberty interest at stake in this case. (Id. at 7-10.)

17    Respondents argue next that, if the case presents a federal question, the petition

18  should be denied because the state courts' adjudication of petitioner's claims did not result in a

19  decision contrary to federal law.  Respondents contend that the state courts' denials of

20  petitioner's habeas petitions were not contrary to federal law because there was more than some

21  evidence to support the Board's decision.  Specifically, respondents note that: (1) petitioner shot

22  and killed the victim as he stood in the street, (2) petitioner has not accepted responsibility for

23  having committed the crime because he does not remember killing the victim, (3) petitioner had

24  previously been convicted of assault with attempt to commit murder and was sent to state prison,

25  (4) after petitioner was released from prison, he was convicted of assault with a deadly weapon,

26  (5) a psychological evaluation of petitioner noted that at the time of the commitment offense his

1   behavior was antisocial and impacted by the influence of alcohol and drugs, and return to such

2   substances would be a great risk factor, (6) petitioner has not sufficiently participated in

3   beneficial self-help and therapy programming, (7) petitioner has received nine CDC 128's and

4   one CDC 115 since his incarceration on the commitment offense, and (8) petitioner does not

5   have realistic or viable parole plans.  Respondents argue that petitioner is not entitled to have his

6   term fixed until the Board finds him suitable for parole, and the Board did not overstep its

7   authority when it found him unsuitable for parole on November 28, 2000.  (Id. at 10-12.)

8            Respondents also assert that petitioner's double jeopardy claim is not a proper

9   claim because the Board did not "relitigate" petitioner's criminal conviction and did not increase

10  the sentence imposed by the court.  Respondents argue that the Board's decision to defer a

11  further suitability hearing for two years was also proper and permitted by state law.  Respondents

12  cite California Penal Code § 3041.5(b)(2)(B), which authorizes the Board to schedule a parole

13  hearing no later than five years after a hearing at which parole is denied, if the prisoner has been

14  convicted of murder and the Board finds it not reasonable to expect that parole would be granted

15  during the following years and states the bases for that finding in writing.  Finally, respondents

16  reject petitioner's unsupported claim that the Governor and the Board have a policy of denying

17  parole to all murderers serving life sentences.  Respondents contend that petitioner's speculation

18  does not present a federal question and should not be considered.  (Id. at 12-14.)

PETITIONER'S TRAVERSE

19

20           Petitioner disagrees with respondents' assertions that his continued incarceration

21  is proper, that the Board's decision was correct, that he was convicted of a further charge of

22  assault with a deadly weapon in 1983, that the Board correctly found him to present great

23  psychological risk factors, that his administrative disciplinary infractions were serious, that

24  viable parole plans are necessary, and that the San Joaquin County Superior Court's denial of his

25  habeas petition was proper.  Petitioner also disagrees with virtually all of the admissions and

26  denials set forth in respondents' answer.

1    Petitioner argues that this court has jurisdiction over his claims and that those

2 claims show "repeated violations of constitutional rights at these administrative board hearings."[1]

3 Petitioner contends that his right to equal protection has been violated by the state's policy of

4 denying parole to murderers serving life sentences.  He claims that the Board's decision that he

5 poses an unreasonable risk of danger to society is not supported by any evidence at all and that

6 the treatment he has been afforded shocks the conscience.  Petitioner urges the court to correct

7 the state's "mistaken political, social and moral wrongs." (Traverse at 34.)  He argues that the

8 state is collaterally estopped from relitigating his 15-years-to-life sentence and converting it to a

9 death penalty, and asserts that this court has the authority to prevent such double jeopardy

10 violations by the state.

11                                      ANALYSIS

12 I.  Standards of Review Applicable to § 2254 Actions

13    A writ of habeas corpus is available under 28 U.S.C. § 2254 "only on the basis of

14 some transgression of federal law binding on the state courts."  Middleton v. Cupp, 768 F.2d

15 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  Federal habeas

16 relief is not available for errors in the interpretation or application of state law.  Estelle v.

17 McGuire, 502 U.S. 62, 67-68 (1991); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir.

18 1986).

19    Section 2254 as amended in 1996 sets forth the following standards of review to

20 be applied by federal courts to state court decisions:

21        An application for a writ of habeas corpus on behalf of a person
         in custody pursuant to the judgment of a State court shall not be
22        granted with respect to any claim that was adjudicated on the
         merits in State court proceedings unless the adjudication of the
23        claim–

24 _____

25    [1] This action concerns petitioner's first subsequent parole consideration hearing. Petitioner's
   traverse asserts that the "Board Subsequent Hearing at issue was Petitioner's fifth (5th) hearing" and
   that the Board converted his sentence "to a life-without possibility of parole (or death penalty)."
26 (Traverse at 15-16.)

1          (1) resulted in a decision that was contrary to, or involved an
     unreasonable application of, clearly established Federal law, as
2    determined by the Supreme Court of the United States; or

3          (2) resulted in a decision that was based on an unreasonable
     determination of the facts in light of the evidence presented in the
4    State court proceeding.

5    28 U.S.C. § 2254(d)(1) and (2). See Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

6    Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

7    II.  Due Process Clause

8          The Due Process Clause of the Fourteenth Amendment prohibits state action that

9    deprives any person of life, liberty, or property without due process of law.  A person alleging a

10   violation of the right to procedural due process must establish that he was deprived of an interest

11   cognizable under the Due Process Clause and that the procedures attendant upon that deprivation

12   were not constitutionally sufficient.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S.

13   454, 459-60 (1989); Board of Regents v. Roth, 408 U.S. 564, 571 (1972).  In the parole context,

14   a petitioner alleging due process claims must demonstrate that he has a protected liberty interest

15   in parole and show that he was denied one or more of the procedural protections that must be

16   provided, i.e., the process due when a liberty interest is at stake.

17         The Ninth Circuit has determined that "California's parole scheme gives rise to a

18   cognizable liberty interest in release on parole."  McQuillion v. Duncan, 306 F.3d 895, 902 (9th

19   Cir. 2002).  However, because parole-related decisions are not part of the criminal prosecution,

20   the full panoply of rights due a defendant in criminal proceedings is not constitutionally

21   mandated.  Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987).  Due process

22   is satisfied in the context of a hearing to set a parole date where the prisoner is afforded notice of

23   the hearing, an opportunity to be heard and, if parole is denied, a statement of the reasons for the

24   denial.  Id. (citing Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1,

25   16 (1979)).  See Morrissey v. Brewer, 408 U.S. 471, 481 (1972) (describing the procedural

26   process due in cases involving parole issues).  Violation of state mandated procedures will

1   constitute a due process violation only if the violation causes a fundamentally unfair result.

2   Estelle, 502 U.S. at 65

3              In California, the setting of a parole date for a state prisoner is conditioned on a

4   finding of suitability.  Cal. Penal Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402.  As long

5   as the state's decision regarding parole suitability is supported by "some evidence," the federal

6   court must find that the decision complies with the requirements of federal due process.  Morales

7   v. California Dep't of Corrections, 16 F.3d 1001, 1005 (9th Cir. 1994), rev'd on other grounds,

8   514 U.S. 499 (1995); Perveler v. Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992) (per curiam).  The

9   "some evidence" standard is met if there is evidence from which the conclusion of the

10  administrative tribunal can be deduced, Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir.

11  1986), and the decision bears some indicia of reliability, Jancsek, 833 F.2d at 1390; Perveler, 974

12  F.2d at 1134.

13             The "some evidence" standard is minimally stringent, and a decision must be

14  upheld if there is any evidence in the record that could support the conclusion reached.  Powell v.

15  Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Superintendent v. Hill, 472 U.S. 445, 455-56

16  (1985), and Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)).  Determining whether the "some

17  evidence" standard is satisfied does not require examination of the entire record, independent

18  assessment of the credibility of witnesses, or the weighing of evidence.  Toussaint, 801 F.2d at

19  1105.  The question is whether there is any reliable evidence in the record that could support the

20  conclusion reached.  Id.

21  III.  Equal Protection Clause

22             The Fourteenth Amendment provides that  "[n]o State shall . . . deny to any

23  person within its jurisdiction the equal protection of the laws."  U.S. Const. amend XIV, § 1.

24  Under the Equal Protection Clause, "the State must govern impartially."  McQueary v. Blodgett,

25  924 F.2d 829, 834 (9th Cir. 1991).  Laws and rules that apply evenhandedly to all persons within

26  a jurisdiction comply with the fundamental principle of equal protection.  See id. (citing Jones v.

1  Helms, 452 U.S. 412, 423 (1981)).  To establish an equal protection violation, a prisoner must

2  show that others similarly situated were treated more favorably and that the disparate treatment

3  was based upon an impermissible motive.  See United States v. Estrada-Plata, 57 F.3d 757, 760

4  (9th Cir. 1995).  Ultimately, the Equal Protection Clause "'guarantees equal laws, not equal

5  results.'"  McQueary, 924 F.2d at 835 (quoting Personnel Adm'r v. Feeney, 442 U.S. 256, 273

6  (1979)).

7          A petitioner raising an equal protection claim in the parole context must

8  demonstrate that he was treated differently from similarly situated prisoners and that the Board

9  lacked a rational basis for its decision.  See McGinnis v. Royster, 410 U.S. 263, 269-70 (1973)

10 (reviewing differences in release dates under rational basis test and balancing the state's efforts to

11 ensure that prisoners are sufficiently prepared for release to protect public safety, on the one

12 hand, with the prisoner's interest in release, on the other hand).

13 IV.  Double Jeopardy Clause

14         The Double Jeopardy Clause of the Fifth Amendment, made applicable to the

15 states through the Fourteenth Amendment, guarantees that no person shall "be subject for the

16 same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  The provision

17 protects against a second prosecution for the same offense and multiple punishments for the same

18 offense.  Witte v. United States, 515 U.S. 389, 396 (1995); United States v. Wolfswinkel, 44

19 F.3d 782, 784 (9th Cir. 1995).  Because parole and probation are part of the original sentence,

20 decisions concerning parole and probation, including their revocation, do not constitute multiple

21 punishments for the original offense.  See United States v. Brown, 59 F.3d 102, 104-05 (9th Cir.

22 1995) (per curiam).

23 V.  Ex Post Facto Clause

24         The United States Constitution prohibits the passage of ex post facto laws.  U.S.

25 Const. art. I, § 9, cl. 3 ("No . . . ex post facto Law shall be passed.").  A law violates the Ex Post

26 Facto Clause only if it (1) punishes as a crime an act that was not criminal when it was

9

1  committed; (2) makes a crime's punishment greater than when the crime was committed; or (3)

2  deprives a defendant of a defense available at the time the act was committed.  Collins v.

3  Youngblood, 497 U.S. 37, 52 (1990).  "Ex post facto principles do not bar retroactive application

4  of procedural changes when the effect of the change upon a petitioner's actual punishment is only

5  speculative and could not be known with certainty."  Johnson v. Gomez, 92 F.3d 964, 965 (9th

6  Cir. 1996) (citing California Dep't of Corrections v. Morales, 514 U.S. 499 (1995)).

7  VI.  The State Courts' Decisions

8           In the present case, both the California Supreme Court and the California Court of

9  Appeal summarily denied habeas petitions attacking the Board's November 28, 2000 decision

10  finding petitioner unsuitable for parole.  The order issued by each of these courts is "an

11  unexplained order," i.e., "an order whose text or accompanying opinion does not disclose the

12  reason for the judgment."  Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).  When confronted

13  with a state court's unexplained order, the federal court applies the following presumption:

14  "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained

15  orders upholding that judgment or rejecting the same claim rest upon the same ground."  Id. at

16  803.  In applying the look-through presumption, unexplained orders are given no effect.  Id. at

17  804.

18           Here, there was a reasoned state judgment issued by the San Joaquin County

19  Superior Court.  This court will look through the unexplained orders of the California Supreme

20  Court and the California Court of Appeal to the decision of the San Joaquin County Superior

21  Court in order to determine whether the state courts' adjudication of petitioner's federal claims

22  satisfies the standards set forth in § 2254.

23           The San Joaquin County Superior Court addressed petitioner's claims as follows:

24           A Petition for Writ of Habeas Corpus, by FRANCISCO
         LOPEZ, was filed with the court on August 27, 2001.  Petitioner
25         alleges an improper and unlawful failure by the BPT to set his
         minimum parole release date in violation of his due process and
26         equal protection rights.  Specifically, that the panel failed to

1   correctly apply the statutory authority; relitigated the unchangeable
    circumstances of the offense; increased his criminal culpability
2   from 2nd degree murder to 1st degree; and issued a deferral of 2
    years based on improper dual use of same factors.
3
        The documentation received reflects that Petitioner has
4   pursued the applicable administrative remedy through a 1040
    appeal to the BPT.  Review at that level resulted in a denial of the
5   appeal on all issues, with a finding that the panel committed no
    error in determining that Petitioner remained unsuitable for release
6   and confirming the 2 year deferral period.

7       The Petition and supporting documentation fails to set forth
    sufficient facts to establish a prima facie case for the relief
8   requested, as required by law [In Re Bower (1985) 38 Cal3d 865,
    872] and summary denial is appropriate.  [People v. Jackson
9   (1980) 28 Cal3d 264, 296].

10      Therefore, the Petition is denied.

11  (Pet., Ex. C.)

12  VII.  Discussion

13      At the parole suitability hearing conducted on November 28, 2000, the Board

14  announced its decision on the record, finding that petitioner was not suitable for parole because

15  he would pose an unreasonable risk of danger to society or a threat to public safety if released

16  from prison.  (Answer, Ex. C at 30.)

17      Referring to the statement of facts contained in a Board report dated May 1997

18  and previously incorporated in the record of the proceeding, the Board stated that petitioner's

19  offense was carried out in an exceptionally cruel manner and, "in a dispassionate manner . . .

20  which demonstrates a disregard for human life."  (Id.; see id. at 6-9 & 30.)  The Board noted that

21  petitioner shot the victim, who was known to him, with a handgun in the street, causing the

22  victim's death.  (Id. at 30.)  In addition, the Board noted that petitioner had previously inflicted or

23  attempted to inflict serious injury on a victim, that he had a record of violence or assaultive

24  behavior, with an escalating pattern of violence that included assault with intent to commit

25  /////

26  /////

11

1  murder[2] and assault with a deadly weapon, that he had failed to profit from society's previous

2  attempts to correct his criminality by way of a prison term and parole, that he had not sufficiently

3  participated in beneficial self-help and therapy programming, and that he had received nine

4  counseling chronos and one administrative disciplinary charge while imprisoned on the current

5  offense.  (Id. at 30-31.)  The Board found that petitioner lacked realistic parole plans in that he

6  did not have a viable residence in the county of last legal residence in the United States or in

7  Mexico, if deported, and did not have acceptable employment plans in either country.  (Id. at 31-

8  32.)  The Board noted that the Fresno County District Attorney opposed a finding of parole

9  suitability.  (Id. at 32; see id. at 25-26.)

10            The Board concluded with the following summary of its findings:

11            [T]he prisoner needs extra time to fully understand and deal with
              the causation factors which led to the commitment of the life
12            crime.  Until progress is made the prisoner continues to be
              unpredictable and a threat to others.  Therapy in a controlled
13            setting is needed and due to the prisoner's assaultive history and
              his claim that he blacked out during the commission of the instant
14            offense, there's no indication that the prisoner would behave
              differently if paroled.  Nevertheless, the prisoner should be
15            commended for obtaining his GED, for completing vocational
              drafting, for participating in AA/NA, for being disciplinary-free
16            since 1995, and only having – and that's minor discipline, and only
              one 115 since his incarceration, which was division F, and also for
17            his involvement presently in vocational electronics.  However,
              these positive aspects of his behavior do not outweigh the factors
18            of unsuitability.

19  (Id. at 32-33.)[3]  For the same reasons, the Board found that it was not reasonable to expect that

20  parole would be granted at a hearing during the following two years.  (Id. at 33-34.)

21  _____

22      [2]   In reviewing petitioner's criminal history, a panel member asked petitioner if he
    remembered the attempt to commit murder and what it was about.  Petitioner stated that he
23  remembered it and "[i]t was an argument."  (Tr. at 9-10.)

24      [3]   Because of this other evidence relied upon by the Board, this is not a case where
    petitioner's due process rights are implicated by repeated parole denials based upon continued
25  reliance solely on  the unchanging factors of the commitment offense and conduct prior to
    imprisonment in the face of a positive psychological report and substantial evidence of remorse and
26  rehabilitation.  See Biggs v. Terhune, 334 F.3d 910, 917 (9th Cir. 2003).

1    The Board recommended that petitioner remain disciplinary-free and, if possible,

2    continue upgrading vocationally and educationally.  (Id. at 34.)  In conclusion, the presiding

3    commissioner suggested that petitioner participate in any available self-help and therapy

4    programming:

5          PRESIDING COMMISSIONER ANGELE:  . . . .  I think at this
           point I'm concerned quite honestly about you blacking out to the
6          point that you don't remember any of this.  And I don't know if
           these kind of blackouts could occur again for some reason.  I think
7          we need to do something with you as far as psychologically
           speaking, maybe some more one on one to try to get to the bottom
8          of this for your benefit.  I'd like to see you on the street without a
           doubt, but I don't want to see you out there and have another
9          blackout for some reason.  And so we're going to recommend that
           we try to get some counseling set up so we can get to the bottom of
10         this.

11   (Id.)

12   Applying the minimally stringent "some evidence" standard to the present record,

13   the undersigned finds that the Board's decision is supported by some evidence and that the

14   evidence bears indicia of reliability.  Although the record also includes some evidence tending to

15   indicate that petitioner may not pose a threat to society if released, the Board was not obligated to

16   prefer that evidence to the evidence it relied upon.  The court finds that the requirements of due

17   process are satisfied and that the state courts' adjudication of petitioner's due process claims did

18   not result in a decision that was contrary to, or involved an unreasonable application of, clearly

19   established federal law or a decision that was based on an unreasonable determination of the facts

20   in light of the evidence presented in the state court proceedings.  Petitioner is not entitled to

21   federal habeas relief under the Due Process Clause of the Fourteenth Amendment.

22   Petitioner's equal protection claims are supported only by speculation based on

23   statistics concerning the percentage of prisoners granted parole dates during various fiscal years.

24   This record does not establish that petitioner was treated differently from similarly situated

25   prisoners.  Petitioner has not alleged facts or offered evidence sufficient to establish a prima facie

26   case of uneven application of the law to similarly situated persons.  The court therefore finds that

13

1   the state courts' adjudication of petitioner's equal protection claims did not result in a decision

2   that was contrary to, or involved an unreasonable application of, clearly established federal law

3   or a decision that was based on an unreasonable determination of the facts in light of the

4   evidence presented in the state court proceedings.  Petitioner is not entitled to federal habeas

5   relief under the Equal Protection Clause of the Fourteenth Amendment.

6          Neither the Board's failure to set a parole release date at petitioner's initial

7   suitability hearing nor the Board's consideration of petitioner's commitment offense and criminal

8   history at the subsequent parole consideration hearing served to extend the punishment for

9   petitioner's crime.  The court finds that petitioner has not demonstrated a violation of the Ex Post

10  Facto Clause.  The Board's consideration of petitioner's commitment offense and criminal

11  history in determining petitioner's suitability for parole and in deferring further parole

12  consideration for two years did not serve to relitigate petitioner's commitment offense and did

13  not result in a second punishment for the same offense.  The court finds that petitioner has not

14  demonstrated a violation of the Double Jeopardy Clause.  To the extent that petitioner alleges

15  mere violations of state law arising from the alleged dual use of facts and from other alleged

16  misapplications and misinterpretations of state law, the court finds that petitioner's claims are not

17  cognizable in federal court.

18          On the record before the court, the undersigned finds that petitioner is not entitled

19  to relief on any claim alleged in his petition.

20          Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

21  a writ of habeas corpus be denied and that this action be dismissed.

22          These findings and recommendations will be submitted to the United States

23  District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within

24  twenty days after being served with these findings and recommendations, any party may file and

25  serve written objections with the court.  A document containing objections should be titled

26  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to objections

1  shall be filed and served within ten days after service of the objections.  The parties are advised

2  that failure to file objections within the specified time may waive the right to appeal the District

3  Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

4  DATED: July 11, 2005.

5

6                                                                DALE A. DROZD
                                                                 UNITED STATES MAGISTRATE JUDGE

7  DAD:13
   lope2148.157

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26